# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

DAVID DWAYNE CASSADY,            )
                                 )
    Plaintiff,                   )
                                 )
v.                               )   Case No.   CV408-250
                                 )
BRIAN OWENS, *Commissioner of*   )
*the Georgia Department of Corrections*; )
JAMES E. DONALD; THALRONE        )
WILLIAMS, *Warden*; GREGORY      )
THOMAS, *Deputy Warden*; and     )
JAMES DEAL, *Deputy Warden*;     )
                                 )
    Defendants.                  )

## REPORT AND RECOMMENDATION

David Dwayne Cassady brought this 42 U.S.C. § 1983 prisoner conditions case alleging that defendants were deliberately indifferent to his serious medical and mental health needs by forcing him to be exposed to environmental tobacco smoke ("ETS") during his incarceration at Coastal State Prison. Defendants have filed a motion to dismiss Cassady's complaint. (Doc. 25.) Cassady has moved for a preliminary injunction to prevent his continued exposure to ETS at the Augusta State Medical Prison ("ASMP"), where he is now confined.

(Docs. 10 & 27.)

## I. MOTION TO DISMISS

Cassady contends that the wardens at Coastal State Prison and the Commissioner of the Department of Corrections have exposed him to dangerous levels of ETS in violation of the Eighth Amendment and that the commissioner is continuing to do so. (Docs. 1 & 9.) Defendants raise several reasons for dismissal.[1] (Doc. 25.) They first contend that plaintiff has failed to state an Eighth Amendment claim.[2]

---

[1] Defendants have not supported their motion with an affidavit or evidence outside the pleadings, though they reference the exhibits attached to Cassady's complaint. "Under Rule 10(c) of the Federal Rules of Civil Procedure, a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Kurtis A Kemper, *What Matters Not Contained in Pleadings may be Considered in Ruling on a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or Motion for Judgment on the Pleadings under Rule 12(c) without Conversion to Motion for Summary Judgment*, 138 A.L.R. FED. 393 § 3[a] (1997). Because the exhibits are annexed to Cassady's complaint, the Court is not consulting matters outside the pleadings. Thus, it is not converting the motion to dismiss into one for summary judgment. *See, e.g., Taylor v. Appleton*, 30 F.3d 1365, 1368 n. 3 (11th Cir. 1994).

[2] Defendants also contend that Cassady's claims for damages against the defendants in their official capacities are barred by the Eleventh Amendment and, alternatively, by the language of § 1983 itself (for such suits are against the state and states are not "persons" for the purposes of § 1983). (Doc. 25-2 at 4-7.) Cassady clarifies, however, that he only seeks damages from defendants in their individual capacities. (Doc. 33 at 10-13.) And he seeks injunctive and declaratory relief against them only in their official capacities. (*Id.*) Since plaintiff is not seeking damages from defendants in their official capacities, their motion to dismiss those claims should be **DENIED**. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) (recognizing

(Doc. 25-2 at 7-12.) In the Court's screening order (doc. 13), it determined that Cassady stated a plausible claim as to his *future* health; however, the Court did not address his *present*-health ETS exposure claim. *See Brown v. Smith*, 187 F. App'x 947, 949 (11th Cir. 2006) (distinguishing claim that officials exposed prisoner to unreasonable risk of damage to future health from *present*-health ETS claim). Defendants, nevertheless, contend that Cassady has failed to show that they were deliberately indifferent to his future health. (Doc. 25-2 at 11.)

A plaintiff states a future-harm Eighth Amendment claim for ETS exposure by

> "alleging that [prison officials] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling* [*v. McKinney*], 509 U.S. [25,] 35, 113 S.Ct. 2475 [(1993)]. As for the objective factor, the prisoner must show that he himself is being exposed to unreasonably high levels of ETS. *Id.* Relevant facts will include whether the prisoner remains housed in the environment and whether the facility has enacted a formal smoking policy. *Id.* at 35-36, 113 S.Ct. 2475. The objective factor further considers "a

---

that state officials *are* "persons" under § 1983 when sued for *injunctive* relief); *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (the Eleventh Amendment only prohibits *damages* suits against state officials acting in their official capacities). Cassady, however, should amend his complaint to so reflect.

scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS ... [and] also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id.* at 36, 113 S.Ct. 2475 (emphasis in original). As for the subjective factor, the prisoner must show that prison authorities demonstrated a "deliberate indifference" to his plight. *Id.* The adoption of a smoking policy "will bear heavily on the inquiry into deliberate indifference." *Id.*

*Kelley v. Hicks*, 400 F.3d 1282, 1284 (11th Cir. 2005). Here, Cassady states that despite the Georgia Department of Corrections no-smoking policy, his *constant* exposure to cigarette smoke (i.e., close confinement with inmates smoking over 80 cigarettes a day) exacerbated his obsessive-compulsive disorder and caused him to develop reactive airway dysfunction syndrome ("RADS"). (Doc. 1 at 12-13.)[3] The

---

[3] While Cassady was not diagnosed with RADS until after he was moved from Coastal State Prison to Baldwin State Prison, he still complained to Coastal State officials about his breathing problems; he was diagnosed as having chronic bronchitis prior to this lawsuit and prior to the prison transfer. (Doc. 1 at 11.) Moreover, Cassady states that he informed the Coastal staff that the exposure severely exacerbated his obsessive compulsive disorder:

> In fact, on several noted occasions plaintiff was unable to meet certain rules required by him to obey within the prison because of continuous obsessive behavior i.e.: the repeated washing of plaintiffs [sic] body daily to cleanse and rid himself of smoke impurities and toxic, harmful, poisonous chemicals on his skin and hair. Plaintiff changes clothes multiple times throughout the day and vigorously cleans his 10'x12' living quarters i.e.: table, lockers, beds, walls,

4

exposure continued after his move to Baldwin and ASMP, and his health has further declined. He now suffers from asthma, chronic obstructive pulmonary disease, and interstitial lung disease. (Doc. 29 at 2.) The ASMP doctors "ordered a permanent profile [that Cassady] not . . . be around smoke," yet he alleges that he is still housed with a chronic in-room smoker at the medical prison. (*Id.* at 2-3; doc. 28 at 3.) A doctor advised Cassady that continued ETS exposure may give rise to: aggravation of allergies, chronic coughing, breathing attacks, emphysema, pneumonia, increased risk of heart disease, stroke, and cancer. (Doc. 1 at 13.) Cassady has submitted pages of research further detailing the dangers of continued exposure to ETS. (Doc. 1, Exs. 8-11.) At this preliminary point in the proceedings, the Court concludes that notwithstanding the Department of Corrections policy against smoking, Cassady's alleged continuous exposure to heavy levels of ETS poses a serious threat to his future health. Plaintiff has thus satisfied the objective component of his Eighth Amendment claim.

---

    and floor to the extent if he does not do these things plaintiff has aggressive panic attacks.
(*Id.* at 33.)

As for the subjective component, Cassady complains of an unofficial policy of noncompliance with the official Georgia Department of Corrections policy against smoking in the prison housing units. He attests that "the condition of smoke (ETS) within the N-B housing unit was so obvious that the defendants must have purposefully ignored it to not know about it." (Doc. 1 at 27.) He states that "95% of the 86 inmates housed in N-B were smokers and smoked within the housing unit." (*Id.* at 29.) Cassady also has tendered declarations from other prisoners acknowledging that they regularly smoke in the prison dorms. (Doc. 1-3 at 18-28.) He further asserts that smoking indoors has been a constant problem over his sixteen years of confinement. (*Id.* at 28.) Daniel Ledford, another inmate, swears that in his eight years of confinement he has never seen any form of discipline for smoking in any housing area at any of the six Georgia prisons at which he has been housed. (*Id.* at 18.) Finally, despite plaintiff's constant protestations of harm to defendants, he has never been moved to a truly non-smoking area. (*Id.* at 26.) That is, Cassady complained of his heavy exposure but

was regularly ignored.

Cassady has alleged a plausible claim that the defendants have been deliberately indifferent to a significant risk of harm to his future health.[4] *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *see Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949-51 (2009) (to survive motion to dismiss, complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; claim has "facial plausibility" when plaintiff pleads factual content that allows court to draw reasonable inference that defendant is liable for the misconduct alleged).

Plaintiff's *present* medical care claim, however, fails. While bronchitis and obsessive-compulsive disorder may be objectively serious medical needs, *see Palacio v. Hofbauer*, 106 F. App'x 1002, 1005 (6th Cir. 2004) (finding that inmate who alleged that he had bronchitis

---

[4] Defendants rely on *Kelley*, where the Eleventh Circuit dismissed an ETS claim because the plaintiff had not offered sufficient evidence to show that defendants' failure to enforce the no-smoking policy was more than negligence. (Doc. 25-2 at 11.) *Kelley*, however, was decided at the summary judgment stage. At the motion to dismiss stage of the proceedings, Cassady survives review because, he alleges, the defendants have deliberately ignored the no-smoking policy in the prison housing units in which he has been housed.

that was exacerbated by exposure to ETS stated an Eighth Amendment claim), Cassady has not offered any facts or evidence indicating that the defendants were subjectively aware that his exposure to ETS was exacerbating those specific medical conditions.[5] Although Cassady submitted letters and grievances (and sometimes spoke) to the defendants, such notice alone is not enough. *See Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1541-42 (11th Cir. 1994) (Kravitch, J., concurring) (plaintiff must show that the supervisor's knowledge amounted to deliberate indifference to the asserted harm or risk, in that the knowledge was "so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."). To establish direct participation by the wardens and commissioner, Cassady must allege facts showing that defendants "dr[ew] the inference" that their failure

---

[5] Cassady's complaint documents his medical history, noting that he first started exhibiting symptoms of chronic bronchitis in July 2008. (Doc. 1 at 11.) He submitted a medical request form complaining of his breathing difficulties on July 13, 2008, and was first seen for his complaints on July 15, 2008. (*Id.* at 54.) When he was finally seen by a doctor, he was prescribed antibiotics. (*Id.* at 11.) He was also diagnosed with obsessive compulsive disorder, which was severely exacerbated by his exposure to ETS. (*Id.* at 12, 33.) After his transfer to Baldwin State Prison, he was first diagnosed with reactive airway disease. (*Id.* at 12-13.)

to provide smoke free accommodations for Cassady placed him in "a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). None of the facts in the complaint indicates that the defendants attributed the diagnosis of chronic bronchitis or his obsessive-compulsive decline as being directly relatable to his constant exposure to ETS. Consequently, his present-health ETS deliberate indifference claim should be **DISMISSED**.[6]

---

[6] Defendants contend that Cassady is trying to hold them vicariously liable for the actions of their subordinates (presumably in failing to enforce the smoking ban). (Doc. 25-2 at 12.) They state that "Cassady has failed to allege any specific facts to support that Defendants are individually responsible for his smoking environment." (*Id.* at 13.) Cassady, however, states that each of the defendants "has some controlling degree of authority within Coastal State Prison by and through their official positions. This influence was sufficient enough at the time to enable any of the defendants to take some sort of action to reasonably abate the issue." (Doc. 1 at 17.)

It is well established that supervisory liability under § 1983 cannot be based upon theories of vicarious liability or respondeat superior. *Iqbal*, 129 S.Ct. at 1948-49; *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Cassady, however, is not proceeding under a vicarious liability or respondeat superior theory. *Cottone v. Jenne*, 326 F.3d 13522 1360 (11th Cir. 2003); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1998) (per curiam). Here, Cassady has alleged that the Commissioner and wardens have knowingly tolerated, if not actually sanctioned, an unofficial policy under which the constitutional violations occurred. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986); *Fundiller v. Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985). And second, he has submitted reams of declarations and affidavits showing that the problem is so widespread throughout the prison system that no reasonable Commissioner or warden could be unaware of the ETS problem.

## II. **PRELIMINARY INJUNCTION**

Cassady requests a preliminary injunction against the Commissioner regarding his exposure to ETS at Augusta State Medical Prison.[7] (Doc. 27.) He seeks to be moved from the "smoking" dormitory floor of ASMP to the medical floor. (Doc. 28 at 10.) Defendants oppose the motion.[8] (Doc. 35.)

A district court may grant a preliminary injunction "only if the moving party shows that: (1) it has a substantial likelihood of success

---

In addition, defendants contend that they are entitled to qualified immunity. (Doc. 25-2 at 14-16.) This argument fails, however, as Cassady states a clear Eighth Amendment claim under *Helling* and *Kelley*. *See, e.g., Brown v. Georgia Dept. of Corrections*, 2009 WL 915877 at *3 (M.D.Ga. Mar 31, 2009) (unpublished) (denying qualified immunity in asthmatic inmate's ETS lawsuit against Georgia Department of Corrections).

[7] Cassady also moves for an injunction against the officials at Baldwin State Prison. (Doc. 10.) But a prisoner's claim for injunctive relief is mooted by his transfer or release from the facility about which he complains. *Zatler*, 802 F.2d at 399 ; *Asad v. Crosby*, 158 F. App'x 166, 168 n.2 (11th Cir. 2005). Since Cassady was transferred to Augusta State Medical Prison, his "Baldwin injunction" claim should be **DENIED** as moot.

[8] Defendants assert that Cassady's allegations should not be considered, since they relate to ETS exposure at ASMP rather than Coastal State Prison. (Doc. 35 at 4.) They state that ASMP officials "are not even parties to this action." (*Id.*) Cassady, however, has alleged a Georgia prison system-wide violation, and he has named the Georgia Department of Corrections Commissioner as a defendant. His continued ETS exposure is directly relevant to his present allegations. To that end, the Court vindicates the public interest against judicial-system manipulation when it construes pro se inmate complaints liberally to prevent "transfer-for-mootness" maneuvers.

on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *ACLU v. Miami-Dade Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)). Since it is "an extraordinary and drastic remedy," it should not "be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Id.* at 1198 (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)).

Defendants rather conclusorily contend that Cassady has not met his burden as to any of the requisites. (Doc. 35 at 4-5.) First, they baldly state that Cassady is not likely to prevail on the merits. (*Id.* at 4.) Yet, as explained above, Cassady in fact has stated a viable Eighth Amendment claim. And while it is not certain he will win, the above analysis also shows that it is at least substantially likely his claim will succeed. Those reasons include plaintiff's showing of his serious

medical conditions and the circumstantial evidence of the prison's palpable laxity in enforcing its own anti-smoking policy. *Cf. King v. Sherry*, 2008 WL 4534416 at * 4 (W.D. Mich Sep. 29, 2008) (unpublished) (denying preliminary injunctive relief to ETS inmate plaintiff because, inter alia, "Defendants have taken aggressive steps in an effort to eliminate the exposure of all prisoners to ETS.").

Defendants next contend that Cassady will not be irreparably harmed by continued exposure. (Doc. 35 at 4.) Specifically, they contend that Cassady "fails to establish how he will be irreparably harmed if he is not moved to another floor at ASMP, as he claims that the prison is rampant with smoking violators." (*Id.*) Cassady, however, asks to be moved to the *medical floor*, which *is* a smoke-free environment. (Doc. 29 at 4-5.). Surely, if the defendants are serious about enforcing their no-smoking policy, then the burden of finding plaintiff at least *one* cell that is smoke-free ought not be all that burdensome.

As to the third requisite, defendants state that ordering such a move will set a bad precedent, and that alone will outweigh whatever

damage the injunction's denial may cause Cassady. (Doc. 35 at 4.) Defendants, however, do not dispute Cassady's medical history -- his RADS has been elevated to asthma, and he has been diagnosed with chronic obstructive pulmonary disease and interstitial lung disease. (Doc. 29 at 2.) He has been given more powerful medication and treatment -- his Albuterol inhaler was replaced with Advair and Qvar, a steroid. (*Id.*) In addition, Cassady self-administers a nebulizer compressor twice daily, has been prescribed oxygen, and he has been "ordered a permanent profile not to be around smoke." (*Id.* at 2-3; doc. 28 at 3.) Nor do defendants dispute that he is housed with a smoker and that such continued exposure to ETS threatens Cassady's very life. (Doc. 28 at 4.)

Despite Cassady's compelling showing of certain medical harm, the defendants rest on a generalized assertion that a ruling against them will set a "bad precedent." The Court disagrees. The threatened injury to plaintiff here easily outweighs the burden upon the defendants to house him in a non-smoking area in accordance with his physician's orders. Again, the prison system has consistently (and for

13

some 15 years) claimed to this Court that it was enforcing a no-smoking policy.[9] If it has been serious, then it ought not be all that difficult to find at least one smoke-free cell for Cassady. And if it has not been serious, then it is time for judicial intervention.

Finally, the defendants contend that the injunction is "clearly adverse to the public interest." (Doc. 35 at 5.) But they offer no support for their assertion -- i.e., they never explain why the injunction is adverse to the public interest. Cassady contends that it in fact is not adverse to the public interest since "it is always in the public

---

[9] It was almost 15 years ago that the Georgia prison system was expressly warned against casual disregard of *Helling*'s command, and that unrelenting laxity may one day cost it "dearly":

> [T]his Court finds it extremely curious that the state, which underwrites the costs of inmate and indigent health care, would not take a more proactive stance on prohibiting the sale of tobacco products within the prison system. While this may be the first ETS case brought to trial in this district, it certainly will not be the last. It does not take an oracle to see that the state would do well to more quickly advance its smoking eradication program. Even though the Court has denied injunctive relief to Plaintiff, it is painfully obvious that a mere regulation against smoking that is negligently enforced in a situation where inmates are allowed to purchase tobacco products at the inmate store is akin to having no policy. Somewhere down the road this negligence may well amount to a constitutional deprivation which could cost the state dearly.

*Redding v. Gaither*, No. CV593-005, doc. 66 (S.D.Ga. Jul. 23, 1996) (Moore, J.) (unpublished).

14

interest for prison officials to obey the law." (Doc. 28 at 7.) Defendants fail to rebut this rather simple, self-evident assertion. The same must be said for Cassady's next contention: That it could save the "citizens of Georgia hundreds of thousands of dollars in medical care due to plaintiff's current and future decline in health resulting from the continued and involuntary inhaling of high levels of ETS found in the prison housing units." (*Id.* at 8.)

On balance, the Court is persuaded that Cassady's claim has sufficient "heft" to justify a preliminary injunction in this case. Consequently, his motion for preliminary injunction (doc. 27) should be **GRANTED** and defendants should be ordered to transfer Cassady to the medical floor of ASMP or otherwise provide him with smoke-free accommodations.

### III. CONCLUSION

For the reasons explained above, defendants' motion to dismiss (doc. 25) David Dwayne Cassady's complaint should be **GRANTED in part and DENIED in part**. Cassady's motion for preliminary

15

injunction (doc. 27), however, should be **GRANTED**.[10] Since Cassady was transferred to Augusta State Medical Prison, his "Baldwin injunction" (doc. 10) claim should be **DENIED** as moot.

**SO REPORTED AND RECOMMENDED** this __2nd__ day of July, 2009.

/s/ G.R. SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[10] Cassady has filed two other motions. First, he moves "to add new witnesses." (Docs. 30 & 31.) He simply seeks to update the list of witnesses he filed with his initial complaint. His motion is **GRANTED**. He also moves for leave to file a sur-reply to defendants' motion to dismiss. (Doc. 32.) He speculated that the defendants would reply to his response to their motion to dismiss. (*Id.*) They did not. In any event, all parties before this Court are free to file as many reply briefs as they want without leave of court. *Podger v. Gulfstream Aerospace Corp.*, 212 F.R.D. 609, 609 (S.D.Ga. 2003); see also Local Rule R. 7.6 (authorizing reply briefs but imposing notice requirements and time limits). Hence, this motion is **DENIED** as moot.

In addition, defendants have moved for a protective order and stay of the proceedings solely based upon their belief that the Court would grant their motion to dismiss. (Doc. 34.) This request also is **DENIED** as moot.