# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| DAVID DWAYNE CASSADY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CV408-250 |
| BRIAN OWENS, *Commissioner of the Georgia Department of Corrections*; JAMES E. DONALD; THALRONE WILLIAMS, *Warden*; GREGORY THOMAS, *Deputy Warden*; and JAMES DEAL, *Deputy Warden*, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## **REPORT AND RECOMMENDATION**

On September 24, 2010, the Court directed the undersigned to conduct a show cause hearing to determine whether civil contempt sanctions should be imposed upon defendant Brian Owens, Commissioner of the Georgia Department of Corrections, because of his alleged failure to provide plaintiff with smoke-free accommodations as directed by the preliminary injunction issued by this Court on September 11, 2009. (Doc. 90.) In compliance with that Order, a show cause hearing was held on October 21, 2010. For the following reasons, the undersigned concludes

that while there is compelling evidence that the defendant did not comply with the terms of the preliminary injunction, civil contempt is no longer an appropriate remedy in this case. Further, should the Court choose to vindicate its authority by punishing the defendant with criminal contempt sanctions, the defendant must be provided with all of the protections set forth in Fed. R. Crim. P. 42.

Some background is needed to understand why defendant is no longer subject to civil contempt. On July 2, 2009, the undersigned recommended that the Court enter a preliminary injunction requiring that plaintiff David Dwayne Cassady be transferred "to the medical floor of ASMP [Augusta State Medical Prison] or otherwise provide[d] . . . with smoke-free accommodations." (Doc. 37 at 15.) On September 11, 2009, the Court concurred with that recommendation, adopted the R&R as the opinion of the Court, and granted a preliminary injunction against defendant Owens requiring that Cassady "be housed in smoke-free accommodations." (Doc. 40 at 2 n. 2.) The Court emphasized that Cassady was to be held in a facility "where inmates are not allowed to smoke inside" and cautioned that should it later be determined that

Cassady was housed in an area where "the Georgia Prison System's policy of no indoor smoking exists only on paper, the Court will not hesitate to deal harshly with Defendant for failing to comply with an Order of this Court." (*Id.*)

On February 16, 2010, Cassady filed a "Motion for Contempt" asserting that during the 5-month period since the issuance of the injunction "Plaintiff has not been housed in 'smoke-free accommodations' at all." (Doc. 63 at 2.) As a proposed remedy for the defendant's "contempt," plaintiff requested that the Court order defendant "to house Plaintiff in the non-restrictive medical unit" at ASMP and award a reasonable attorney's fee to plaintiff for bringing the motion. (*Id.* at 6.)

In a Report and Recommendation entered on April 28, 2010, the undersigned noted that since defendant's response to the contempt motion never disputed Cassady's assertion that he had not been provided the smoke-free accommodations as previously directed by this Court's injunction, defendant had effectively admitted that he had not complied with the Court's express directive. Finding that no evidentiary hearing was required under these circumstances, *see Nat'l Union Fire Ins. Co. v.*

*Olympia Holding Court,* 140 F. App'x 860, 864-65 (11th Cir. 2005), the undersigned recommended granting Cassady's motion for contempt and imposing this sanction: "The Commissioner should be ordered to place Cassady in . . . a smoke-free environment *instanter*." (Doc. 68 at 5.)

On September 24, 2010, the Court rejected that Report and Recommendation, reasoning that while Cassady had met his initial burden of establishing grounds for the belief that defendant had not complied with this Court's injunction, Eleventh Circuit precedent required that defendant be afforded a show cause hearing before sanctions could be imposed. (Doc. 90 at 2-3.) In its Order, the Court noted that its preliminary injunction expired 90 days after its entry, and thus any contempt sanction must relate to defendant's actions during the period "between September 11, 2009 and December 10, 2009." (*Id.* at 4.) The Order directing a show cause hearing contemplated the need for *civil* contempt proceedings against defendant, for it cited only to civil contempt cases and referred to procedures required by those cases. (*Id.* at 2-3.) Neither party raised any objection to the Court conducting such a hearing or to the *civil* nature of the proceeding.

It is well established that the purpose of a civil contempt proceeding is to coerce compliance with a court order.[1] *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994); *In re Lawrence*, 279 F.3d 1294, 1300 (11th Cir. 2002); see 3A Charles A. Wright & Sarah N. Welling, Federal Practice and Procedure § 703 (4th ed. 2010). The sanction for such contempt -- be it a fine or imprisonment -- is contingent upon the contemnor's compliance with the order. In other words, the contemnor has the power to purge himself of the contempt by doing what the Court has ordered him to do. The contemnor "'carries the keys of his prison in his own pocket,'" as it were. *Bagwell*, 512 U.S. at 828 (citation omitted). In contrast, the purpose of criminal contempt is punitive, i.e., to vindicate the authority and dignity of the Court by punishing the wrongdoer for his contemptuous conduct. *Bagwell*, 512 U.S. at 828; 3A Federal Practice and Procedure § 702. Such sanctions are "imposed restrospectively for a 'completed act of disobedience,'" *Bagwell*, 512 U.S. at 829, and the contemnor cannot purge the contempt or "avoid

---

[1] Civil sanctions may also be used to compensate a victim of the contemptuous conduct for his losses resulting from that conduct. *Bagwell*, 512 U.S. at 829; *United States v. Mine Workers*, 330 U.S. 258, 303-04 (1947); *F.T.C. v. Leshin*, 618 F.3d 1221, 1239 (11th Cir. 2010).

or abbreviate the confinement [or fine] through later compliance." *Id*. Further, a criminal contempt proceeding is an independent criminal action requiring the protections provided by the federal criminal rules: A person prosecuted for a contempt (committed out of the court's presence) must be given notice of "the essential facts constituting the charged criminal contempt" and informed of the criminal nature of the proceeding, the prosecution must be handled by a prosecutor appointed by the court for that purpose, and the alleged contemnor must be afforded the right to a jury trial (unless the court treats the contempt as merely a petty offense). Fed. R. Crim. P. 42; *Blum v. Illinois*, 391 U.S. 194, 199-200 (1968); 3A Federal Practice and Procedure §§ 708-711.

None of the protections contemplated by Rule 42 were utilized in this case prior to holding the show cause hearing. And for good reason, for both the Court and the parties treated Cassady's motion for contempt as requesting civil contempt sanctions and referenced civil contempt procedures in discussing the appropriate resolution of that motion. But what was overlooked by the Court, and what neither party pointed out prior to the scheduled show cause hearing, was that civil contempt

sanctions were no longer a possible remedy for the alleged violation of a preliminary injunction that had already expired. As previously noted, the preliminary injunction was only in effect during the 3-month period from September 11 to December 10, 2009. Cassady did not file his motion for contempt until February 16, 2010. At that point, it was not possible for the Court to impose sanctions coercing the defendant to comply with an injunction that was no longer in effect. Overlooking this point, the undersigned nevertheless recommended that the Court adopt the remedy proposed by Cassady, i.e., that it coerce defendant's compliance with the preliminary injunction by requiring that Cassady be placed in a facility "where inmates are prohibited from possessing any tobacco products." The District Judge rejected that recommendation, but he did not do so in recognition of the fact that civil contempt proceedings were no longer possible; instead, he reasoned that the Court should afford defendant a show cause hearing in conformity with Eleventh Circuit opinions addressing "the district court's *civil* contempt power." (Doc. 90 at 2 (emphasis added).) Again, no party objected to the Court's Order or questioned its right to conduct civil contempt proceedings or impose civil

contempt sanctions against defendant.

Through this oversight, the Court forged ahead with a show cause hearing to consider civil sanctions that it was powerless to impose. Civil sanctions were not appropriate, for the purpose of such sanctions is to induce a contemnor's compliance with a court order or to compensate the complainant for losses sustained as a result of that noncompliance. *Leshin*, 618 F.3d at 1239 (quoting *Bagwell*, 512 U.S. at 829). Here, it was not possible to coerce the defendant to comply with an order that had lapsed months before Cassady filed his contempt motion. Further, by the time the Court ordered a show cause hearing, the defendant had already transferred Cassady to a tobacco-free facility. (Doc. 90 at 2.) Thus, Cassady had already received the relief he was seeking.[2]

Civil contempt sanctions are no longer possible here. The Court, however, should consider carefully whether to initiate criminal contempt proceedings against defendant Owens arising from his failure to comply with the Court's directive that Cassady be afforded "smoke-free

---

[2] At no point did Cassady seek to be compensated for any harm or losses he sustained as a result of the defendant's noncompliance with the Court's preliminary injunction. Accordingly, the "compensatory" purposes of a civil contempt order are not at issue here. *See Leshin*, 618 F.3d at 1239.

accommodations." (Doc. 40 at 2 n. 2.) Cassady offered compelling evidence at the show cause hearing that upon the issuance of the preliminary injunction (and despite an explicit warning from the Court of the consequences defendant would face in failing to comply with that directive), the defendant took no action whatsoever. Worse, he continued to house Cassady in a dormitory where prisoners were not only allowed to purchase and possess tobacco but where they blatantly ignored a prison policy forbidding them from smoking tobacco inside the dormitory. In other words, the defendant simply chose to disregard this Court's injunction. As his conduct appears to have been willful, the appointment of a criminal prosecutor and the initiation of formal criminal proceedings seems appropriate in order to vindicate the Court's authority and to follow through on its promise to "deal harshly with Defendant" if he failed to comply with the injunction. (Doc. 40 at 2 n. 2.) The defendant's right to a trial by jury at such a criminal contempt trial depends upon whether the Court treats the matter as a petty offense or as a crime deserving a more serious penalty. *See* 3A Federal Practice and Procedure § 711.

## CONCLUSION

For the above reasons, this Court may not impose civil contempt sanctions against the defendant. Nor may it use the civil contempt procedures contemplated by its prior order as a means of punishing the defendant for any prior willful violation of the injunction. Rather, if the Court is to impose punitive sanctions it must notify the defendant that he is being prosecuted for *criminal* contempt, request that the United States Attorney handle the prosecution (or appoint a special prosecutor if the United States Attorney declines to do so), and afford the defendant the right to a trial by jury unless it treats the contempt as a petty offense.

**SO REPORTED AND RECOMMENDED** this 7th day of December, 2010.

/s/ *signature*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA