FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2011 MAR 22 PM 3:38
CLERK B. West
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DAVID DWAYNE CASSADY,

  Plaintiff,

v.                                          CASE NO. CV408-250

BRIAN OWENS, Commissioner of
the Georgia Department of
Corrections; JAMES E. DONALD;
THALRONE WILLIAMS, Warden;
GREGORY THOMAS, Deputy Warden;
and JAMES DEAL, Deputy Warden,

  Defendants.

## ORDER

Before the Court are Defendants' Motion for Summary Judgment (Doc. 79) and Plaintiff's Motion for Summary Judgment (Doc. 80). For the reasons that follow, both motions are **DENIED**.

### BACKGROUND

Plaintiff originally filed his pro se complaint in this Court on December 15, 2008 (Doc. 1) and was granted leave to file an amended complaint on February 5, 2009 (Doc. 13). Attorney John R. Monroe began to represent Plaintiff and filed his notice of appearance on February 1, 2010. (Doc. 59.)

Plaintiff has been in the continuous custody of the Georgia Department of Corrections ("GDOC") for approximately twenty years. (Doc. 80, Attach. 1 ¶ 1; Doc. 88 ¶ 1.) This lawsuit

pertains to the conditions of his incarceration, specifically the level of environmental tobacco smoke or second-hand smoke ("ETS") to which he has been subjected. Plaintiff was housed at the N-Building of Coastal State Prison ("Coastal") from April 17, 2008 through September 5, 2008. (Doc. 78 ¶¶ 2, 5; Doc. 83, Attach. 1 ¶¶ 2, 5.) The N-Building is divided into an A wing and a B wing, each with two tiers and capable of holding ninety-two inmates. (Doc. 78 ¶ 6; Doc. 83, Attach. 1 ¶ 6.)

Plaintiff's complaint, which was verified as an affidavit (Doc. 1 at 46), states that "at any given time 12-26 inmates are in the common area of the unit (N-B) smoking cigarettes and 3-7 inmates can be found in the TV room smoking" between the "hours of 5 a.m. and 11:30 p.m." (Doc. 1 at 29-30.) Additionally, Plaintiff states that these are areas "he must move through frequently during the course of the day and night to get to the shower, receive medications, meals, water, ice, phone, mail, and to exit the building." (Doc. 1 at 30.) Plaintiff's allegations of indoor smoking are supported by declarations of numerous inmates. (Doc. 1, Attach. 2 at 14-28.)

Plaintiff has detailed several communications with Defendants in which he complained of the level of ETS present and other facts constituting elements of this lawsuit: July 13, 2008 informal grievance to Defendant Thomas; July 23, 2008 informal grievance to Defendant Thomas; July 23, 2008 letter to

2

Defendants Williams, Thomas, and Deal; July 25, 2008 conversation with Defendant Williams; July 26, 2008 letter to Defendants Williams, Thomas, and James; July 27, 2008 letter to Defendant Donald; July 28, 2008 conversation with Defendant Thomas; June 2008 conversation with Defendant Deal; July 30, 2008 formal grievance to Defendant Williams; August 25, 2008 response from Defendant Williams; August 26, 2008 appeal to Defendant Donald; September 4, 2008 conversation with Defendant Thomas. (Doc. 1.)

Plaintiff states that during these various conversations and communications, he "outlin[ed] specific facts and scientific evidence showing that the Plaintiff faced a substantial risk of serious harm if they failed to abate the issue." (Doc. 1 at 26.) Plaintiff also asserts that Defendants "did nothing to remove or otherwise end Plaintiff[']s exposure and direct contact with ETS" even though they "knew Plaintiff[']s roommate was a chronic smoker, who smoked (4) packs of cigarettes in the room daily." (Id.) Further, Plaintiff asserts that "the condition of smoke (ETS) within the N-B housing unit was so obvious, that the Defendants purposefully ignored it to not know about it." (Id. at 27.) Plaintiff further indicates that he informed Defendants of the health risks relating to ETS. (Doc. 1 at 29.)

After reviewing the standard for a motion for summary judgment, the Court will address the substantive issues of the parties' motions.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. NATURE OF CLAIM

The federal constitutional standards for "[t]he treatment a prisoner receives in prison and the conditions under which he is confined" are governed by the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 31 (1993). To demonstrate a violation of the Eighth Amendment by exposure to ETS, a prisoner must show that the defendants, "with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." Giddens v. Calhoun State Prison, 277 Fed. App'x 847, 847 (11th Cir. 2007) (unpublished) (citing Helling, 509 U.S. at 35).

To establish this claim, a prisoner must satisfy two elements: an objective and a subjective factor. The Eleventh Circuit reiterated and summarized the Supreme Court's clear guidance on these requirements by stating,

> As for the objective factor, the prisoner must show that he himself is being exposed to unreasonably high levels of ETS. Relevant facts will include whether the prisoner remains housed in the environment and whether the facility has enacted a formal smoking policy. The objective factor further considers a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS . . . [and] also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. As for the subjective factor, the prisoner must show that prison authorities demonstrated a deliberate indifference to his plight.

6

> The adoption of a smoking policy will bear heavily on the inquiry into deliberate indifference.

Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005) (citations and quotations omitted). To meet the subjective requirement, "the prisoner must prove three facts: (1) subjective knowledge of the risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence. Id. at 1284 n.4 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)).

The law once required a defendant to demonstrate "a medical need to be placed with a non-smoking cellmate that is sufficiently serious to implicate the Eighth Amendment" and that "mere exposure to [ETS] without more, does not constitute a deprivation of a prisoner's Eighth Amendment rights." Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). However, times change and, with it, so does the governing law. See Bartlett v. Pearson, 406 F. Supp. 2d 626, 630 (E.D. Va. 2005) (contrasting a case requiring a showing that "exposure to ETS aggravated an existing medical condition in order to state an Eighth Amendment claim" with more recent authority allowing a claim when "levels of ETS [] pose an unreasonable risk of serious damage to [] future health").

## III. DEFENDANTS' MOTION

Defendants' motion contains several arguments in support of their claim to summary judgment. The most efficient method of addressing their contentions will be to consider each of these arguments, and only those arguments, individually. The Court has attempted, as best it can, to decipher and construe the arguments contained in Defendants' motion and accompanying brief.[1]

First, Defendants contend that Plaintiff was "not exposed to unreasonably high ETS levels" and that "insignificant ETS exposure for such a limited number of times [sic] does not pose an unreasonable risk of serious damage to his future health." (Doc. 79, Attach. 1 at 7.) However, this is not what Plaintiff has alleged. Instead, Plaintiff has submitted evidence demonstrating that his cellmate smoked four packs a day while in the cell shared with Plaintiff. (Doc. 1, Attach. 1 at 23.) The

---

[1] The Defendants are represented by counsel. In fact, no less than four attorneys licensed in Georgia appear on the signature page of their Motion for Summary Judgment. (Doc. 79, Attach. 1 at 23.) Despite this quantitative aspect of their legal team, Defendants' arguments, to a large extent, miss their intended mark and present arguments and facts of questionable importance either to this case or the relevant law. Despite this, the Court has strived to decide each argument as presented—it can do no more. It cannot make arguments for parties or decide controversies on grounds not presented. It cannot delve through voluminous attachments in the record to adequately summarize and present facts. To do so would be to reach beyond the proper role of an impartial arbiter and unfair to opposing litigants.

8

size of the living space shared with this smoking individual was "10 X 12" feet. (Doc. 1 at 33.)

Further, Defendants' own Motion for Summary Judgment contains sufficient facts which either explicitly state or from which a jury could reasonably infer that because of both physical and mental conditions, Plaintiff was not the average healthy inmate and was peculiarly susceptible to ETS. (Doc. 79, Attach. 1 at 8-11 (listing, inter alia, hypertension or high blood pressure, moderate-to-severe asthma, shortness of breath, upper respiratory tract infection, cough and abnormal lung sounds, obsessive compulsive disorder, post-traumatic stress disorder, excessive bathing, changing clothes more than once per day, washing walls, and anxiety).) Further, Defendants' own pleadings admit that "various irritants may present breathing difficulty for an asthmatic, including infection, colds, outdoor and indoor allergens, dust, temperature changes, and strong emotions such as anxiety. Also, <u>ETS can trigger asthmatic episodes by irritating chronically inflamed bronchial passages of people with asthma</u>." (Doc. 79, Attach. 1 at 10-11 (emphasis added).) Defendants have not pointed to a deficiency in Plaintiff's case that warrants the entry of summary judgment on this point. Instead, they seem to have only strengthened it.

Next, Defendants assert that "Coastal had a formally enacted smoking policy" and, by implication, that this "prohibited the use of tobacco products inside of any building." (Doc. 79, Attach. 1 at 8.) However, Defendants' citations to the record do not demonstrate, as a matter of undisputed material facts, that this policy was effective or that its enforcement is being fulfilled in good faith. The record includes evidence of eighty-seven written disciplinary reports for tobacco use from April through October, 2008. (Doc. 78 ¶ 18; Doc. 83, Attach. 1 ¶ 18.) Additionally, Defendants' own statement of material facts admits that not every instance of a correctional officer's detection of a smoking inmate resulted in a written disciplinary form because other "informal correction" methods such as a verbal warning could be used. (Doc. 78 ¶ 13; Doc. 83, Attach. 1 ¶ 13.) Further, numerous affidavits in the record indicate that the smoking policy was not adequately enforced and that indoor smoking occurred. (Doc. 1, Attach. 2 at 18-19, 20-27.) Defendants' only argument appears to be that Plaintiff's claims exaggerate the severity of indoor smoking and that Plaintiff was not housed at Coastal long enough to accrue an Eighth Amendment claim. The case that Defendants cite for this proposition, <u>Oliver v. Deen</u>, 77 F.3d 156 (7th Cir. 1996), does not so hold. The Court's independent research indicates

the opposite of the holding purported by Defendants. See Atkinson v. Taylor, 316 F.3d 257, 268 (3rd Cir. 2003) (denying defendants qualified immunity where prisoner "was exposed, with deliberate indifference to constant smoking in his cell for over seven months" (emphasis added)).

Defendants' third argument is that Plaintiff "failed to casually link his alleged injuries to ETS exposure." (Doc. 79, Attach. 1 at 8.) Defendants point to a variety of other medical diagnoses, claiming that these "are plausible catalysts for his ETS complaints." (Id.) In essence, this argument attempts to demonstrate that Plaintiff is overreacting because of his mental ailments and imperfect compliance with medication regimens. However, the Court sees little relevance, if any, this has on the Plaintiff's claims at this stage of litigation. Even if this Court were to discount Plaintiff's statements in the record, which it has not, ample evidence still remains from other individuals, including inmates, in the record to preclude awarding Defendants summary judgment.

This argument continues with Defendants' attempt to show that "there is no evidence that links Cassady's medical encounters with ETS exposure at Coastal." (Id. at 10-11.) Again, Plaintiff correctly counters that this evidence is not relevant at summary judgment. No element of Plaintiff's claim

11

requires evidence of causation to actual harm already suffered. Plaintiff correctly redirects discussion to the essence of this claim—it focuses on "an unacceptable risk of disease or injury and [whether prison officials] were deliberately indifferent to such exposure, regardless of whether disease or injury actually occurred." (Doc. 83 at 5-6.) See Helling, 509 U.S. at 33 ("[A] prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery."); Giddens, 277 Fed. App'x at 847 (noting that claim is concerned, in part, with whether the levels of ETS exposure amounted to "an unreasonable risk of serious damage to [] future health"). Simply put, "a remedy for unsafe conditions need not await a tragic event." Helling, 509 U.S. at 32.

Defendants' unsuccessful arguments continue with the claim that "Cassady was not unwillingly exposed to ETS." (Doc. 79, Attach. 1 at 11.) Defendants state that Plaintiff purchased thirty-nine tobacco products from the commissary during his five-month period of incarceration and over a hundred similar items during other annual periods of imprisonment. (Id. at 11-12.) However, Defendants' analysis falls short. After impliedly arguing that Plaintiff purchased too much tobacco and was an enabler for other inmates' usage of those products, they then state that "[i]t makes no sense to charge someone with

improperly ignoring a danger that never existed." (Id. at 12.) However, they point to no facts to indicate that Plaintiff was not subjected to an unreasonable level of ETS, while Plaintiff properly demonstrated his ability to meet the requirements of this claim. (Doc. 83 at 6-7.) Plaintiff has shown that his cellmate smoked four packs, or eighty cigarettes, per day, and that several other inmates all smoked near the Plaintiff's and his cell. (Id.) Nowhere do Defendants allege that Plaintiff provided every cigarette smoked indoors, whatever impact this would have on his claim. Inmates were permitted to possess and smoke tobacco under certain conditions at Coastal, the most important of which was not being indoors. In fact, Coastal sold tobacco products to inmates, including Plaintiff. Plaintiff alleges that Defendants were deliberately indifferent to the indoor smoking and usage of these products. Plaintiff is not responsible for regulating the prison environment, including where inmates smoked tobacco—that was, instead, a duty that fell, in part, on Defendants.

Next, Defendants claim that they "were not deliberately indifferent to any risk of ETS exposure" and cite only the existence and purported good faith enforcement of a non-smoking policy within the GDOC. Defendants cite Alvarado v. Litscher, 267 F.3d 648 (7th Cir. 2001), for the proposition that "an

13

Eighth Amendment claim arises when officials deliberately fail to enforce rules regulating smoking." (Doc. 79, Attach. 1 at 13.) This is, however, precisely what Plaintiff alleges. Plaintiff details a series of grievances that he filed that provided information on the existence of and concerning the hazards of indoor smoking by inmates and ETS. (Doc. 80, Attach. 1 ¶¶ 9, 10.) Ample facts in the record, if believed, indicate that each Defendant subjectively knew of the risk posed by allowing Plaintiff to be exposed to ETS, and that their disregard of that risk was more than merely negligent. The Court finds, on the facts as Plaintiff has presented them, that "a trier of fact may infer deliberate indifference." Bozeman v. Orum, 422 F.3d 1265, 1273 (2005); see also Brown v. Smith, 187 Fed. App'x 947, 950 (2006) (affirming denial of summary judgment on the basis of qualified immunity, citing "numerous declarations from 5 prisoners stating that Ware State Prison's 'no smoking inside' policy was frequently not enforced").

Defendants also contend that the existence of a non-smoking policy precludes an Eighth Amendment violation. This is only half true. While the existence of a non-smoking policy is highly relevant, "there must be a good faith effort to enforce the policy and the absence of such efforts may result in a finding of deliberate indifference." Bartlett, 406 F. Supp. 2d

at 632. Viewing all facts in the record in the light most favorable to the nonmoving party, Defendants have not demonstrated good faith as a matter of law or as a matter of undisputed material facts. Plaintiff's evidence, if believed, indicates just the opposite. See Atkinson v. Taylor, 316 F.3d 257, 269 (3rd Cir. 2003) (concluding that where prisoner informed officials about ETS and "no change was made to his housing conditions," this constituted "evidence demonstrat[ing] deliberate indifference on the part of prison officials").

Next, Defendants claim that they "cannot be held vicariously liable." (Doc. 79, Attach. 1 at 16.) The recitation of this legal doctrine in a section 1983 claim, while generally correct, does little to assist them in this case. By Defendants' own admission, "Cassady seeks to contend that Defendants did not grant his request to be moved from an environment to which he contributed." (Doc. 79, Attach. 1 at 18.) Plaintiff reinforces this position, saying that he

> is not complaining that some third party non-defendants were the cause of Plaintiff's harm and that Defendants became liable for the conduct of these third parties as a result of Plaintiff's numerous grievances. He claims, instead, that Defendants are directly liable to him for their own deliberate indifference to his future serious medical needs.

(Doc. 83 at 17.)

As the final ground for the grant of summary judgment, Defendants argue that they "are entitled to qualified immunity." (Doc. 79, Attach. 1 at 18.) Defendants correctly state that "to avail of the immunity, a defendant must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." (Doc. 79, Attach. 1 at 18.) Despite correctly stating their burden, Defendants' effort falls wholly short of the required showing. Due to the brevity of the entire subsection devoted by Defendants to satisfying this requirement, the Court quotes it in full:

> a. <u>Defendants were acting within their discretionary authority</u>. When determining whether a defendant was engaged in a discretionary act, the question that must be answered is whether he was pursuing a legitimate job related goal through means that were within his power to utilize. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004). Since all of Plaintiff's claims are premised upon the Defendants' positions with the GDOC, there is no dispute that they were engaged in discretionary functions at the time of the alleged acts.

(Doc. 79, Attach. 1 at 19 (emphasis added).) Even though Defendants articulated both the standard and the burden, notably absent from their arguments is any citation to the record. Even overlooking this obvious misstep, Defendants' argument seems to assume that because Defendants worked for the government, they must have been engaged in discretionary functions. Such a conclusory allegation would be insufficient to withstand a

16

motion for summary judgment, much less indicate the satisfaction of an element on which Defendants bear the burden. Doing so would obviate the need for this requirement at all when a claim is premised on a defendant's government employment. This, quite simply, is not the law. See, e.g., Harbert Int'l v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (requiring a defendant to show that actions were "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority" to establish that challenged actions were within the scope of discretionary authority and concluding that a "bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice"). Even if the evidence were otherwise, "the right of a prisoner to not be subjected to a serious risk of his future health resulting from ETS was clearly established in 1998-99." Alvarado, 267 F.3d at 653.

The next and last topic addressed by Defendants' motion is that "[t]he September 11, 2009, Preliminary Injunction is moot." (Doc. 79, Attach. 1 at 20.) Although the Court is straining to interpret exactly what argument and request for relief Defendants are propounding, this section of the motion is best viewed as an attack on the Court's September 11, 2009 preliminary injunction. However, a brief in support of a motion

for summary judgment, designed to evaluate the merits of a claim, is not the appropriate forum. The Court will, accordingly, refuse to address these arguments as currently filed. Further, any misinterpretation of the relief requested and argument contained in this subsection are solely the fault of the drafter, and not that of the Court.

IV. PLAINTIFF'S MOTION

The outcome of this case, as noted above, will depend on the inference that the trier of fact elects to draw from the evidence presented at trial. Additionally, the Plaintiff and Defendants agree on few material facts at this stage of litigation; instead, most are actually highly disputed. Under these circumstances, Plaintiff's motion (Doc. 80) must be **DENIED**.

## CONCLUSION

For the reasons above, Plaintiff (Doc. 80) and Defendants' (Doc. 79) Motions for Summary Judgment are **DENIED**.

SO ORDERED this 22ND day of March 2011.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA